# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ERIC KEARBY and AMANDA DIEHL**, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>**CATALENT PHARMA SOLUTIONS LLC**,<br><br>        Defendant. | Case No.<br><br>**Civil Action**<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

## CLASS AND FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES

Plaintiffs Eric Kearby ("Kearby") and Amanda Diehl ("Diehl") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, for their Complaint against Defendant Catalent Pharma Solutions LLC ("Defendant"), state and allege as follows:

## INTRODUCTION

1. This case challenges policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* and the Indiana Wage Payment Statute ("IWPS"), I.C. 22-2-5, *et seq*.

2. Plaintiffs bring this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated." Plaintiffs bring this case individually and on behalf of others "similarly situated" persons who may join this case pursuant to § 216(b) (the "Opt-Ins").

1

3. Plaintiff Kearby also bring this claim as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the IWPS on his own behalf and on behalf of other employees employed by Defendant in the State of Indiana.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in Somerset, Somerset County, New Jersey and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

6. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

7. Plaintiff Kearby is an adult individual residing in Bedford, Lawrence County, Indiana. Plaintiff Kearby was employed by Defendant at Defendant's facility in Bloomington, Monroe County, Indiana from 2021 until Kearby voluntarily resigned on December 17, 2024.

8. Plaintiff Diehl is an adult individual residing in Mitchell, Lawrence County, Indiana. Plaintiff Diehl was employed by Defendant at Defendant's facility in Bloomington, Monroe County, Indiana from 2014 until Defendant involuntarily terminated Diehl's employment on December 16, 2024.

9. Within the three years preceding the filing of this Action, Plaintiffs were both employed by Defendant as non-exempt employees who were paid on an hourly basis.

10. At all relevant times, Plaintiffs were employees within the meaning of 29 U.S.C. § 203(e) and the IWPS.

11. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d) and the IWPS.

12. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

13. At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

14. Plaintiffs' written Consents to Join this Action are attached hereto as **Exhibit A**.

## FACTUAL ALLEGATIONS

15. Defendant manufactures, packages, distributes, and sells pharmaceutical products at facilities in Somerset, New Jersey; Princeton, New Jersey; Bloomington, Indiana; Greendale, Indiana; Baltimore, Maryland; Boston, Massachusetts; Emeryville, California; Greenville, North Carolina; Harmans/BWI Airport, Maryland; Kansas City, Missouri; Madison, Wisconsin; Malvern, Pennsylvania; Philadelphia, Pennsylvania; Manassas, Virginia; Morrisville, North Carolina; San Diego, California; St. Petersburg, Florida and Winchester, Kentucky. Defendant is believed to be headquartered in Somerset, New Jersey.

### Facts About Donning and Doffing Sanitized Clothing and Equipment and Good Manufacturing Practices Required of Pharmaceutical Manufacturers by Food and Drug Administration

16. As a manufacturer of pharmaceutical products, Defendant is regulated by the U.S. Food and Drug Administration ("FDA"), and is subject to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 9, *et seq.* (hereinafter "FDCA").

17. In enforcing the FDCA, the FDA promulgates its own Current Good Manufacturing Practices ("GMPs") for the manufacture, processing, packing or holding of a drug product, set forth in 21 C.F.R. § 211, with which Defendant is required by law to comply.

18. The GMPs have a section dedicated to "personnel responsibilities," which specifically requires that "personnel engaged in the manufacture, processing, packing or holding of a drug product shall wear clean clothing appropriate for the duties they perform. Protective apparel, such as head, face, hand, and arm coverings, shall be worn as necessary to protect drug products from contamination," 21 CFR § 211.28(a), and "personnel shall practice good sanitation and health habits. 21 CFR § 211.28(b).

19. Notably, "the failure to comply with any regulation ... in the manufacture, processing, packing, or holding of a drug shall render such drug adulterated .... and such drug, as well as the person who is responsible for failure to comply, shall be subject to regulatory action." 21 CFR § 210.1(b).

20. The FDCA prohibits the adulteration of a drug, and the introduction or delivery for introduction into interstate commerce of any adulterated food. 21 USC § 331.

21. Any person who violates 21 USC § 331 "shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 USC § 333(a)(1).

22. Consequently, if Defendant's employees did not follow the GMPs set forth in 21 CFR § 211.28, they could be held criminally liable under 21 U.S.C. § 333(a)(1).

23. Thus, it would be impossible for Kearby, Diehl and the putative class members, who were engaged in the manufacture, processing, packing or holding of a drug product, to perform their work duties unless they wore sanitary clothing and other protective equipment required by the FDA.

24. Indeed, if Plaintiffs and the putative class members did not follow federal law and wear sanitary clothing and other personal protective equipment, it is possible, if not likely, that this would cause the spread of pathogens to those who consumed Defendant's products.

25. Upon information and belief, Defendant would not want to endanger the public by encouraging or permitting its employees to disregard federal drug-safety laws.

26. Upon information and belief, Defendant would deem it impossible for its employees to perform their job duties unless they were in compliance with federal drug safety laws, including the laws requiring Defendant's employees to wear sanitary and other protective equipment.

27. As a result, compliance with the GMPs by Defendant's employees involved in the manufacture, processing, packing or holding of a drug product is integral and indispensable to the work they are hired to do.

28. Compliance with the GMPs by Defendant's employees involved in the manufacture, processing, packing or holding of a drug product is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

29. Compliance with the GMPs by Defendant's employees involved in the manufacture, processing, packing or holding of a drug product is a component of the work they are hired to do.

30. Unless Defendant's employees involved in the manufacture, processing, packing or holding of a drug product comply with the GMPs, they cannot complete their work.

31. Therefore, the donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Defendant's employees who are involved in the manufacture, processing, packing or holding of a drug product.

32. Because the donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Defendant's employees who are involved in the manufacture, processing, packing or holding of a drug product, the time spent donning and doffing is compensable work time within the meaning of the FLSA and IWPS.

33. The donning of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacture, processing, packing or holding of a drug product is those employees' first principal activity of the day.

34. The doffing of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacture, processing, packing or holding of a drug product is those employees' last principal activity of the day.

35. Very important to both liability and Plaintiffs' proof of damages, all donning and doffing of FDA-required sanitary clothing and protective equipment is and has been recorded by Kearby, Diehl and all putative class members on Defendant's Kronos time clocks. Specifically, all hourly employees clock in by swiping an identification badge in to one of Defendant's Kronos time clocks and then immediately proceed to a locker and don FDA-required sanitary clothing and equipment - the first principal activity of the day. Moreover, all hourly employees clock out at the end of the work shift by swiping an identification badge in to one of Defendant's Kronos time clocks immediately <u>after</u> doffing FDA-required sanitary clothing and equipment at the employee's locker - the last principal activity of the day.

36. As described in the "Rounding" fact section below, even though employees' work time donning and doffing the FDA-required sanitary clothing and equipment is recorded on Defendant's Kronos time clock and records, Defendant rounds all of that required work time at the beginning of a work shift <u>up</u> to a scheduled shift start time, and rounds all of that required work time doffing the sanitary clothing and equipment at a locker immediately before clocking out for the day <u>down</u> to a scheduled shift end time. In doing so, Defendant shaves work time and does not pay each employee for substantial minutes and hours of work each shift and, importantly, each week. Much of this time rounded in Defendant's favor constitutes unpaid overtime.

37. At times relevant to this action, Kearby and Diehl were employed by Defendant in the last three years at Defendant's drug manufacturing facility in Bloomington, Indiana. Both Kearby and Diehl's jobs involved the Plaintiff's job duties involved the manufacture, processing, packing or holding of a drug product. Other similarly situated employees are and were employed by Defendant in the manufacture, processing, packing or holding of a drug product at Defendant's manufacturing facilities in Catalent's locations throughout the United States.

38. Examples of the types of FDA-required sanitary clothing and equipment Defendant required Kearby, Diehl and similarly situated coworkers to wear at work included sanitary lab coats, hair nets, beard nets (Kearby), sanitized steel toe boots that could not be worn outside the facility (Kearby) and sanitized gloves.

39. Because Plaintiffs and other similarly situated employees are involved in the manufacture, processing, packing or holding of a drug product, to comply with the GMPs, the Plaintiffs and putative class members were all required to change from civilian clothing into the required sanitary clothing and gear at Defendant's facility – at lockers (which were generally in a locker room).

40. Plaintiffs and other similarly situated employees who are involved in the manufacture, processing, packing or holding of a drug product cannot complete their work unless they are wearing sanitary clothing and other protective equipment.

41. Compliance with the GMPs by Plaintiffs and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

42. Plaintiffs and other similarly situated employees were non-exempt employees under the FLSA and IWPS and were paid an hourly wage.

43. Plaintiffs and other similarly situated employees were not allowed to take their sanitary clothing and protective equipment home. Rather they were required to change into and out of their sanitary clothing and protective equipment at Defendant's facility.

44. Plaintiffs and other similarly situated employees, as full-time employees, regularly worked 40 or more hours in a workweek in the three years preceding the filing of this Action, including donning and doffing time and associated travel.

45. Plaintiffs and other similarly situated employees were not paid for all of the time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel. As described above and below, Defendant used non-neutral rounding schemes to eliminate and not pay Plaintiffs for this time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel, even though the work time was recorded on Defendant's Kronos time clock.

46. As a result of Plaintiffs and other similarly situated employees not being paid for all hours worked, Plaintiffs and other similarly situated employees were not paid overtime compensation for all of the hours they worked in excess of forty (40) each workweek. Moreover, in weeks Plaintiffs and/or similarly situated employees did not work in excess of forty (40) hours in a work week, Plaintiffs and similarly situated employees were not paid wages in full and on time.

47. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA and IWPS.

48. The amount of time Plaintiffs and other similarly situated employees spent performing unpaid work was substantial each work shift. This, combined with the unlawful rounding scheme, resulted in Plaintiffs and other putative class members losing 30 or more minutes of wages for work time virtually every week.

**Unlawful Rounding of Kronos Time Clock Punch Facts**

49.     Important to this case, all of Kearby, Diehl and their similarly situated coworkers' compensable work time spent donning and doffing sanitary clothing and equipment was recorded on Defendant's Kronos time clocks.  Donning sanitary gear was the very first principal activity Plaintiffs engage in after swiping their badge in Defendant's Kronos time clock.  Donning safety gear occurred within Defendant's facility at an employee locker.  In the same way, Plaintiffs' last principal activity each day was the doffing of sanitary gear at an employee locker just before swiping out for the work day on Defendant's Kronos time clock.  All of this required donning and doffing time was recorded on Defendant's Kronos time clock, however, Defendant rounded off that time and did not pay wages for that work time.

50.     Kearby, Diehl and their similarly situated coworkers are and were common victims of Defendant's compensation scheme whereby it illegally and impermissibly rounded time clock punches in its favor only and in a manner that failed to pay Plaintiffs and all similarly situated coworkers for significant compensable work hours.

51.     Defendant has created a compensation scheme through a series of computer software commands (time punch rounding commands) programmed into Defendant's time clock software and payroll software, coupled with multiple company disciplinary rules regarding tardiness that ensure that Defendant will always benefit from its time punch rounding scheme and guarantee that Defendant will take an impermissible and unfair financial advantage over its employees by rounding in a non-neutral fashion that results in enormous sums of unpaid hourly wages owed to Defendant's hourly paid employees on a cumulative basis.

52.     At all times relevant, for Kearby, Diehl and their hourly-paid employees, Defendant used and uses an electronic time keeping system.  Employees clock in by swiping employee badges

in a computerized time clock. Using this time clock, for each shift, the employee would record his/her actual time he/she began work for each shift and record the actual time the employee ended his/her work shift. If Defendant paid its non-exempt, hourly-paid employees wages and overtime based upon its machine(s)' actual time punches, Defendant would likely have paid wages in compliance with the FLSA, IWPS and other state wage and hour laws.

53. Defendant does not pay its employees' hourly-paid wages based upon actual employee time worked and based upon Defendant's own time punch records.

54. Importantly, Defendant does not record its non-exempt, hourly-paid employees' work time in any other way. The only time records Defendant has to base its payment of wages are the time records generated by its electronic time clocks.

55. Defendant has created a policy and practice whereby it significantly adjusts downward and shaves time from its non-exempt, hourly-paid employees' time records and pays its employees' wages for less than their full time worked and full time reported on Defendant's own time clocks.

56. Based upon its long-standing policy and practice of manipulating and downwardly adjusting time from its non-exempt, hourly-paid employee time records, Defendant has been systematically underpaying its employees significant sums of wages and overtime compensation on a daily basis. The aggregate sum of unpaid wages for all of Defendant's Indiana employees based upon Defendant's non-neutral and self-serving rounding scheme is very substantial on a daily, weekly and annual basis.

57. Defendant's rounding can be determined from the face of Defendant's employees' time punch records and corresponding pay stubs. Defendant rounds all time punches in its favor and to employees' detriment in at least two (2) ways: <u>First</u>, Defendant always deducts 0.5 hours

from the time clock punches measuring every shift worked by every hourly-paid employee, taking the cumulative amount of time from each employee's punch in at the first principal work activity of each shift through the employee's punch out at the last principal activity of the shift and then subtracting from that cumulative total a full 0.5 hour amount. This amount is deducted automatically from each employee's recorded work hours every shift regardless of whether the employee is provided a bona fide meal period and regardless of the actual length of any meal period (e.g., was the meal period less than 30 minutes?, was the meal period less than 20 minutes?). <u>Second</u>, from each employee's time punches which have already been reduced by a full 0.5 hours, Defendant further reduces the net cumulative time downward in Defendant's favor only by many minutes (generally, up to 14 minutes, with up to 7 minutes shaved from initial time punches and up to 7 minutes shaved from exit time punches) for each work shift. All rounding functions are programmed into Defendant's time clock and corresponding pay roll software and all rounding functions favor Defendant and harm employees.

58.   Defendant's automatically deducted 0.5 hour amounts for purported meal periods further creates FLSA violations as 1) Defendant does not keep any records of whether a meal period was taken by an employee before automatically deducting a full 0.5 hours from that employee's recorded work time for the shift, 2) Defendant does not record or keep records of the duration of any meal period taken by an employee for any meal period (e.g., punch out to start the meal and punch back in to return to work duties) before deducting a full 0.5 hours from that employee's recorded work time for the shift, and 3) Defendant has no effective practice or policy communicated to employees that would enable an employee to request that Defendant forego an automatic 0.5 hour deduction from recorded work time because the employee did not get a meal break or had a meal period cut shorter than 30 minutes. Defendant takes its 0.5 hour automatic deductions from

every hourly-paid employee's recorded work time without any records and without knowing whether or not the employee had a meal break and without knowing the duration of any meal break. This is particularly unlawful and problematic when an employee had any meal period that was 20 minutes or less in duration, as the FLSA has a bright line rule that any break in time of 20 minutes or less is work time and must be compensated.

59. Plaintiffs further allege and assert that they and similarly situated hourly-paid coworkers routinely had meal periods during work shifts for Defendant that lasted significantly less than 30 minutes. Regardless of length of meal period or whether a meal period occurred, Defendant always rounded the meal break up to 0.5 hours and automatically deducted 0.5 hours from every shift Kearby and Diehl worked and every shift every other hourly-paid employee worked.

60. Further, Defendant is rounding employee time punches for Defendant's own financial benefit and for the sake of rounding alone. Defendant is not and has not made any determination or created any record for any shift for any employee that the employee was on the clock but not actively working. Moreover, as explained above, Plaintiffs were working as their very first activity was legally required donning of sanitary clothing and equipment and the very last activity entailed doffing of that sanitary clothing and equipment. Defendant has no records to show that its self-serving rounding occurred based upon any observation or determination by Defendant that an employee subjected to rounding was not working while on the clock during any shift. Defendant's records are the best and only records that show employees were working at all times punched in on Defendant's time clock. Employees were working when punched in on Defendant's time clock.

61. Plaintiffs will need to obtain Kronos time clock data and payroll records in discovery to provide specific dates and specific amounts of work time that Defendant rounded and did not

pay, but Kearby, Diehl and every similarly situated class member was subjected to time clock rounding every work shift and every work week, resulting in unpaid wages and unpaid overtime every work week.

62. Specifically, both Kearby and Diehl worked overtime hours for Defendant in calendar year 2024. Both Kearby and Diehl expressly allege and assert that they were not paid for all time recorded on the Kronos clock and all time worked in every work week. This is particularly true based upon the combination of Defendant's computer programmed and non-neutral time clock punch rounding plus the fact that the rounded time included work time Kearby and Diehl spent donning and doffing FDA required sanitized clothing and equipment.

63. Defendant's computer-programmed time rounding scheme, coupled with its disciplinary rules, harmed Plaintiffs and Plaintiffs' similarly situated coworkers in the same way on a company-wide basis every work week. This rounding scheme has been harming Defendant's employees for many years. Based upon information and belief, this time rounding scheme has been harming employees for three (3) or more years prior to the date this Complaint has been filed. Kearby and Diehl's unpaid wages for regular and overtime hours and their damages under the FLSA and IWPS are representative of those owed to all of Defendant's workers subjected to the same time clock and pay roll software and same time punch rounding scheme.

64. Pursuant to its systematic, class-wide practices, Defendant is not compensating its hourly-paid employees for all time worked and recorded on a continuous work day basis.

65. All of Defendant's time rounding practices were intentionally computer programmed and performed to Defendant's advantage and the detriment and harm of Kearby, Diehl and all of Defendant's hourly-paid employees. Defendant's time punch rounding practices are not neutral, as required by the FLSA and corresponding Indiana law.

66. Defendant intentionally and knowingly violated its employees' rights to earned wages and earned overtime compensation through Defendant's illegal and non-neutral time rounding schemes and Defendant's conscious decision to shave recorded work time and pay employees less in wages and overtime than the employees earned while performing work for Defendant.

67. By way of this Complaint, Kearby and Diehl seek for themselves and all other similarly situated hourly-paid employees all wages, all overtime compensation, liquidated damages, statutory damages, statutory penalties and all damages owed. Additionally, Kearby and Diehl seek payment of their attorneys' fees, costs and expenses. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA and IWPS.

## COLLECTIVE ACTION ALLEGATIONS

68. Plaintiffs bring this action on their own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

69. The class that Plaintiffs seek to represent and for whom Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiffs themselves are members, is composed of and defined as follows:

> **All current and former employees of Catalent Pharma Solutions LLC employed at one or more location in the United States who were involved in the manufacturing, packaging, or handling of pharmaceutical products and who 1) were required to don and doff sanitary clothing and other protective equipment, and 2) were subjected to Defendant's non-neutral rounding of Kronos time clock punches at any time during the three (3) years preceding the date of the filing of this Action to the present and worked more than forty (40) hours in at least one workweek**.

70. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and

costs under the FLSA. In addition to Plaintiffs, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiffs are representative of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

71. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

### INDIANA CLASS ACTION ALLEGATIONS BROUGHT UNDER THE INDIANA WAGE PAYMENT STATUTE FOR CATALENT'S INDIANA EMPLOYEES

72. Plaintiff Kearby brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and a class (sub-class) of persons employed by Defendant in Indiana within the last two years ("Indiana Class") defined as:

> **All current and former employees of Catalent Pharma Solutions LLC employed at the Bloomington, Indiana and/or the Greendale, Indiana facilities who were involved in the manufacturing, packaging, or handling of pharmaceutical products and who 1) were required to don and doff sanitary clothing and other protective equipment, and 2) were subjected to Defendant's non-neutral rounding of Kronos time clock punches at any time during the two (2) years preceding the date of the filing of this Action to the present and worked in at least one workweek**.

73. The class is so numerous that joinder of all class members is impracticable. Plaintiff is unable to state the exact size of the potential Indiana Class but, upon information and belief, avers that it consists of at least several thousand people.

74. There are questions of law or fact common to the Indiana Class including: whether Defendant failed to pay its employees for required donning and doffing time, hand washing, and

associated travel, and whether that resulted in the underpayment of overtime and regular wages. This also includes the common question created by Defendant's computer programmed, non-neutral rounding scheme used on its Kronos time clock punches.

75. Plaintiff Kearby will adequately protect the interests of the Indiana Class. His interests are not antagonistic to but, rather, are in unison with, the interests of the Indiana Class members. Plaintiff's attorneys have broad experience in handling class action wage-and-hour litigation and are fully qualified to prosecute the claims of the Indiana Class in this case.

76. The questions of law or fact that are common to the Indiana Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Indiana Class, listed above, are common to the class, and predominate over any questions affecting only individual class members.

77. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Indiana Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Indiana Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

78. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

79. Plaintiffs and other similarly situated employees were not paid for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or

for associated travel. Plaintiffs and other similarly situated employees were not paid for hours worked and recorded on Defendant's Kronos time clock as a result of Defendant's non-neutral and computer programmed rounding scheme that resulted in unpaid wages to employees.

80. Plaintiffs and other similarly situated employees regularly worked more than 40 hours per work week for Defendant.

81. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for work time recorded on Defendant's Kronos time clocks, particularly including time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for associated travel, resulted in Defendant's failure to pay Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

82. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

83. As a result of Defendant's practices and policies, Plaintiffs and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO
**(Indiana Wage Payment Statute Violations)**

84. Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

85. Plaintiff Kearby and other similarly situated Indiana employees were not paid for work time recorded on Defendant's Kronos time clock, particularly for work time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, or for

associated travel.  Plaintiffs were not paid this recorded work time as a result of Defendant's computer programmed and non-neutral Kronos time clock rounding schemes.

86. Kearby has a statutory wage claim arising under the Indiana Wage Payment Statute, I.C. 22-2-5 and he is the Plaintiff who represents the same or similar interests of all current Catalent Pharma Solutions LLC hourly-paid employees and all of Catalent Pharma Solutions LLC's former hourly-paid employees who worked for Defendant at a location in Indiana and voluntarily resigned from employment.

87. By way of this Claim, Kearby is seeking, individually and on behalf of members of the Indiana Class of current and former Catalent Pharma Solutions LLC Indiana employees, all available damages, including all unpaid wages, all underpaid wages, all available liquidated (treble damages), all attorney's fees, costs and expenses, plus any other damage to which Kearby and his fellow Indiana Class members may be entitled pursuant to law.  Pursuant to I.C. 22-2-5-2, Kearby is seeking, individually and on behalf of members of the Indiana Class, payment of unpaid wages, underpaid wages, plus all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all attorney's fees, costs and expenses.

88. Kearby is expressly alleging that Defendant did not act in good faith when it failed to pay wages to Kearby and the Indiana Class.  Kearby is expressly alleging that Defendant acted in bad faith when it failed to pay all recorded and earned wages to Kearby and the Indiana Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all persons similarly situated, pray that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Certify this case as a class action under Fed. R. Civ. P. 23 as to the Indiana Wage Payment Statute Class;

C. Enter judgment against Defendant and in favor of Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Indiana Class pursuant to the IWPS;

D. Award Plaintiffs and the putative class actual damages for unpaid wages;

E. Award liquidated damages to the maximum amount permitted by applicable law (100% under the FLSA and 200% under the IWPS);

F. Award Plaintiff Kearby and the Indiana Class all liquidated damages, statutory damages, attorney's fees, costs and expenses for IWPS violations;

G. Award Plaintiffs and the putative class attorneys' fees, costs, and disbursements; and,

H. Award Plaintiffs and the putative class further and additional relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury as to all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Ravi Sattiraju, Esq. is hereby designated as lead trial counsel for Plaintiffs.

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby certify that the matter in controversy herein is not the subject of any other action pending in any court nor any pending arbitration or administrative proceeding.

Respectfully submitted,

*s/ Ravi Sattiraju*
Ravi Sattiraju (Bar # 035251998)
**SATTIRAJU & THARNEY, LLP**
50 Millstone Road, Building 300, Suite 202
East Windsor, New Jersey 08520
Telephone: (609) 469-2110
Facsimile: (609) 228-5649
Email: rsattiraju@s-tlawfirm.com

                                Robert P. Kondras, Jr. (Bar # 18038-84)
                                (Pro Hac Vice To Be Filed)
                                **HASSLER KONDRAS MILLER LLP**
                                100 Cherry Street
                                Terre Haute, IN  47807
                                Telephone:  812-232-9691
                                Facsimile:  812-234-2881
                                Email:  kondras@hkmlawfirm.com

                                Hans A. Nilges (Bar # 0076017)
                                (Pro Hac Vice To Be Filed)
                                **NILGES DRAHER LLC**
                                7266 Portage Street, N.W., Suite D
                                Massillon, OH 44646
                                Telephone:  (330) 470-4428
                                Facsimile:  (330) 754-1430
                                Email:  hans@ohlaborlaw.com

                                ***Attorneys for Plaintiffs***

Dated:  April 7, 2025